**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

**ALEXANDRA VARDALAS MARAGHA**,

Plaintiff,

v.

**CITY OF CHICAGO**, a municipal entity;

**THOMAS J. DART**, Sheriff, Cook County Sheriff's Office, in his official capacity, only; and,

**DAVID O'NEAL BROWN**, Superintendent of the Chicago Police Department, in his official capacity, only;

Defendants.

Case No.

Hon. Judge:
Magistrate Judge:

**COMPLAINT AND JURY DEMAND**

**COMPLAINT**

Plaintiff **ALEXANDRA VARDALAS MARAGHA**, by and through her attorneys, CAIR Legal Defense Fund and CAIR-Chicago, brings this action for violations of the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc *et seq.* ("RLUIPA"), pursuant to 28 U.S.C. § 1331, and states as follows:

## INTRODUCTION

1. On March 19, 2017, after being arrested for a warrant issued about a minor traffic violation from years earlier, Defendants forced Ms. Alexandra Vardalas to remove her hijab, despite repeated pleas to keep her hijab on in accordance with her faith, photographed her twice, and left her without hijab for the entire duration of her detention at Cook County Jail.

2. Those photographs have since been made available to law enforcement agencies and to the public.

3. Every day that passes that her photograph remains available for men to view in violation of her sincerely held religious beliefs, Ms. Vardalas suffer an ongoing harm that this action seeks to remedy.

## JURISDICTION AND VENUE

4. This Court has original federal question jurisdiction over Plaintiff's claims of violations of the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc *et seq*., pursuant to 28 U.S.C. § 1331.

5. This Court has personal jurisdiction over Defendants because Defendants reside and conduct business in the State of Illinois.

6. Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, 28 U.S.C. § 1343, by Rules 57 and 65 of the Federal Rules of Civil Procedure, and by the general, legal, and equitable powers of this Court.

7. Plaintiff's claims for attorneys' fees and costs are predicated upon 42 U.S.C. §§ 1988 and 2000cc-2(d), which authorize the award of attorneys' fees and costs to prevailing parties, pursuant to RLUIPA.

8. Venue is proper under 42 U.S.C. § 1391 as to all Defendants because Defendants operate within the geographical boundaries of the State of Illinois, and because a substantial part of the acts described herein occurred within this District.

**PARTIES**

9. Plaintiff Alexandra Vardalas Maragha is a Muslim American and a resident of Cook County, Illinois. She is a mother of two children and has pursued a career in education, journalism, and communications. Most recently, Ms. Vardalas graduated from Western Governors' University, obtaining a Master's degree. She also obtained a Bachelor of Arts degree in Communication, Media, and Theatre from Northeastern Illinois University. Over the past few years, Ms. Vardalas has taught English, mathematics, and reading at various private and public schools in Chicago.

10. Defendant City of Chicago is a municipal entity duly organized and existing under the laws and Constitution of Illinois, with all of the powers specified and necessarily implied by the Constitution and the laws of Illinois and exercised by various government agents and officers. The City of Chicago acts through Defendants and its agents and employees. At all relevant times, Defendant adopts policies and prescribes rules, regulations, and practices affecting all facets of the training, supervision, control, employment, assignment and removal of individual officers, including those individual officers charged with operating and overseeing the search, seizure, detention, and arrests at the City's police facilities. Moreover, at all relevant times, Defendant executes policies, practices, and customs for the Cook County Sheriff's Office and the Chicago Police Department, including around the processing of detainees in its custody. Defendant is sued in its own right on the basis of its policies, customs, and practices which give rise to Plaintiff's claims.

11. Defendant Dart is the ultimate decisionmaker of Cook County Sheriff's Office, a municipal entity, duly organized, and carrying on governmental functions in Cook County, Illinois (hereinafter Defendant "Dart" or Cook County Sheriff's Office"). Further, Defendant Dart has the authority to adopt policies and prescribe rules, regulations, and practices affecting all facets of the training, supervision, control, employment, assignment, and removal of its individual officers, including those officers charged with operating and overseeing the search, seizure, detention, and arrests at the County's correctional facilities, including Cook County Jail where Ms. Vardalas was detained. Defendant Dart's principal office is located at 3206 South California Avenue, Chicago, Illinois 60608, where Defendant processes Cook County custodial bookings. Defendant Dart is being sued in his official capacity, only.

12. Defendant Superintendent David O'Neal Brown is the ultimate decisionmaker of Chicago Police Department, a municipal entity, duly organized, and carrying on governmental functions in Cook County, Illinois (hereinafter Defendant "Brown" "Chicago Police Department," or "CPD"). Defendant Brown is responsible for establishing policies, practices, and customs for the Chicago Police Department, including the 19th District Town Hall Police Station where Ms. Vardalas was detained, regarding the processing of detainees in its custody. Defendant Brown's principal office is located at 3510 South Michigan Avenue, Chicago, IL 60653, where Defendant processes custodial bookings. Defendant Brown is being sued in his official capacity, only.

## FACTUAL BACKGROUND

13. Ms. Vardalas is a Muslim American woman who wears the hijab in public

pursuant to her sincerely held religious beliefs.[1] The hijab is a religious head covering worn by Muslim women. Additionally, Ms. Vardalas wears modest clothing that covers her body, with the exception of her face and hands. Wearing the hijab and modest clothing is integral to Ms. Vardalas' religious beliefs as a Muslim.

14. Ms. Vardalas wears the hijab at all times when she is in mixed-gendered spaces that include males outside of her immediate family. The wearing of the hijab is a deeply rooted tradition in Islam, and for Muslim women like Ms. Vardalas, it is a pillar of her religious practice and identity.

15. Appearing in public or being photographed without hijab is a serious breach of Ms. Vardalas' faith, and a deeply humiliating and defiling experience—particularly if those photographs are preserved and disseminated. Ms. Vardalas has not appeared in public without her hijab since she began wearing it more than 15 years ago.

16. On March 19, 2017, Ms. Vardalas was on her way home when CPD officers Stranski and Tomkow stopped her at 2317 W. Pratt Blvd. in Chicago. Like every day, Ms. Vardalas was wearing the hijab when she was pulled over.

17. Ms. Vardalas' driver's license and registration were run by Stanski and Tomkow, who informed her that she had an outstanding arrest warrant in connection with a 2011 traffic infraction. The officers called in an additional squad car and soon a female and male officer arrived on the scene. The female officer patted down Ms. Vardalas and

---

[1] A hijab is a headscarf worn by Muslim women that covers their head, hair, and neck. It is worn while they are in public spaces and in the presence of males that are not members of their immediately family. It is an expression of modesty and a visible manifestation of their faith.

handcuffed her.

18. CPD officers then transported her to the 24th District Rogers Park Police Station. Ms. Vardalas was instructed to fill out paperwork and was patted down again by another female officer.

19. Afterwards, Ms. Vardalas was transported to the 19th District Town Hall Police Station. Once she arrived, two CPD female officers processed Ms. Vardalas and instructed her to remove her hijab for her booking photo.

20. Ms. Vardalas explained the significance of her hijab and how removing it publicly would violate her faith. She explained that she had legally been able to wear her hijab for her driver's license photograph as well as for her passport photograph.

21. Ms. Vardalas saw a flyer in the booking station area with information on religious accommodations for arrestees wearing religious headwear. The flyer included an example of a Jewish man wearing a kippah and stated that such religious headwear was permitted to be worn at the time their booking photographs are taken.

22. She pointed the CPD officers to the flyer and told them that she should be allowed to keep her hijab on for her booking photograph, but CPD officers refused to listen to Ms. Vardalas and instructed her to remove her hijab in public view.

23. Despite the flyer, and in violation of her sincerely held religious beliefs, Ms. Vardalas reluctantly removed her hijab. As Ms. Vardalas stood there exposed and without her hijab, she felt humiliated and degraded.

24. Ms. Vardalas was shaking, feeling demeaned because she was forced to remove her hijab. She repeatedly pled with officers to put her hijab back on, until finally, they allowed her to put it back on to take a second set of photographs with it on. Both sets of photographs—

with and without the hijab—were eventually made publicly accessible.

25. As of this day, Ms. Vardalas' photographs are available to the public through public record requests and on third party websites.

26. The next morning, on March 20, 2017, CPD transferred Ms. Vardalas to Cook County Jail until her court appearance in the afternoon.

27. Upon arrival at Cook County Jail, two female correctional officers booked and processed Ms. Vardalas. They again told her to remove her hijab in public view prior to taking another photo.

28. This photo was taken as a part of Cook County Jail's intake policy and practices and was done in furtherance of Cook County Jail's detention of Ms. Vardalas.

29. Ms. Vardalas, distressed and humiliated, explained the significance of her hijab and how removing it publicly would violate her religious beliefs.

30. She also told the officers that she was permitted to wear the hijab for both her driver's license and passport photographs, and that she had seen a flyer at the police station about religious head coverings in booking photographs. However, the female correctional officers refused to allow Ms. Vardalas to take the booking photograph with her hijab. They demanded she remove it.

31. Reluctantly, and in violation of her sincerely held religious beliefs, Ms. Vardalas removed her hijab – again in public view– from her head. As Ms. Vardalas stood there without her hijab, she saw male officers looking at her while she was photographed.

32. Ms. Vardalas was mortified. She felt stripped of her dignity and identity and degraded by being forced to publicly remove her hijab against her religious beliefs—for a second time.

33. As with the first two booking photographs, this booking photograph is also available to the public through a public records request and on third party websites.

34. Two female correctional officers then instructed Ms. Vardalas to change into facility-issued clothing. The two male correctional officers provided Ms. Vardalas with a short-sleeved shirt, which was also in violation of her religious beliefs that require her to cover her arms in front of men that are not members of her immediate family.

35. Ms. Vardalas reluctantly went to the changing area to change, but quickly realized that it offered no privacy as male correctional officers could access the area and watch her undress, another egregious violation of her sincerely held religious beliefs.

36. After changing into facility-issued clothing, Ms. Vardalas put her hijab back on and a coat to cover her arms.

37. However, a female correctional officer told her she was prohibited from wearing her hijab and the coat during her detention.

38. Ms. Vardalas responded that covering her arms and wearing a hijab were both part of her faith and requested to speak to a supervisor to get a religious accommodation.

39. The female correctional officer refused her request. Instead, the correctional officer told Ms. Vardalas to speak to a supervisor herself and ordered her to remove her coat and hijab.

40. No supervisor ever came to follow-up on Ms. Vardalas' concerns and request for a religious accommodation despite her repeated pleas to speak to one.

41. Moreover, Ms. Vardalas attempted to speak to multiple correctional officers at every opportunity that day, but she was ignored each time.

42. For the entire duration of her detention, Ms. Vardalas was detained in the

presence of male officers and detainees without her hijab on and in short sleeves—in violation of her religious beliefs.

43. During a medical evaluation, Ms. Vardalas once again made a request to wear her hijab and long sleeves and explained that it was required by her religious beliefs. The correctional officers she spoke with responded they would check with their superiors and get back to her, but no correctional officer ever did.

44. After her medical evaluation, Ms. Vardalas waited in a crowded holding area—without a hijab and long sleeves in violation of her religious beliefs—as she watched a video being played on the television.

45. Ms. Vardalas saw that the video included information about incarcerees being allowed to practice their religion. Upon seeing this, Ms. Vardalas again sought out a female officer and told her about her requests to wear her hijab and long sleeves, citing the video as evidence of it being permitted. However, her request was again ignored.

46. Cook County correctional officers refused to return Ms. Vardalas' hijab until her bond was posted and she was released from custody.

47. Defendants, by and through their agents, and in accordance with their policies and practices, photographed Ms. Vardalas without her hijab multiple times.

48. Defendants, by and through their agents, and in accordance with their policies and practices, uploaded these photographs to the Illinois statewide database and the Chicago Police Department database. The photographs were then published on databases operated by third-party vendors where it remains widely available online.

49. Ms. Vardalas' images without her hijab are also available to law enforcement agencies as well to members of the public who request it.

50. Defendant Cook County Sheriff's Office and its employees and agents prohibited Ms. Vardalas from wearing her hijab or covering her arms during her detention pursuant to its policies, customs and/or practices.

51. Ms. Vardalas has suffered and continues to suffer an ongoing harm each day that her photograph remains available for men to view in violation of her sincerely held religious beliefs.

**COUNT I**
**Violation of the Religious Land Use and Institutionalized Persons Act**
**42 U.S.C. § 2000cc *et seq.***

52. Plaintiff reincorporates and realleges the foregoing paragraphs, as though fully set forth herein.

53. RLUIPA provides, in pertinent part, that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person- (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a)(1)-(2).

54. Plaintiff is a "person" as defined under RLUIPA and, at all relevant times, was confined to an institution when the events transpired.

55. Plaintiff wears the hijab and covers her arms in accordance with her sincerely held religious beliefs.

56. At all relevant times, Defendants are covered under the term "Government" as defined under the RLUIPA. *See* 42 U.S.C. § 2000cc- 5(4)(A)(i)-(iii).

57. At all relevant times, Defendants are federally funded "institution[s]," as defined under 42 U.S.C. § 2000cc-1(a) and 42 U.S.C. § 1997.

58. Defendants' acts or omissions, policies, and customs while Plaintiff was in Defendants' custody substantially burdened her religious exercise that requires her to wear the hijab and cover her arms in mixed-gendered spaces.

59. Defendants' acts or omissions, policies, and customs, do not further a compelling government interest in identifying arrestees. A photograph of a person's face sufficiently identifies arrestees. For example, the U.S. Department of State permits individuals to wear religious head coverings when taking their passport photographs, so long as their face remains visible for identification purposes.

60. In addition, other police departments across the country—including the New York Police Department—allow Muslim women to wear the hijab while being photographed and to wear their hijab and long sleeves during their detention.

61. Defendants' acts or omissions, policies, and customs, are not the least restrictive means of furthering a compelling government interest. Defendants could have, but did not, photograph Ms. Vardalas with her hijab only, as CPD took her picture with and without her hijab. Additionally, Defendant Cook County correctional officers could have, but did not, allow Ms. Vardalas to wear her hijab and long sleeves to avoid being exposed to men during her detention.

62. As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff has sustained damages and has suffered, and continues to suffer, mental anguish, physical and emotional distress, humiliation, and embarrassment.

63. Plaintiff respectfully requests this Honorable Court to enter a judgment in favor of Plaintiff and against Defendants for damages in whatever amount Plaintiff is found to be entitled, injunctive and declaratory relief in the form included in the Prayer for Relief below,

costs and attorneys' fees wrongfully incurred to bring this action; nominal and punitive damages, and all such other relief that this Honorable Court deems just and proper.

## PRAYER FOR RELIEF

64. Plaintiff requests this Honorable Court enter a judgement in favor of Plaintiff and against Defendants, on each and every Count in this Complaint, and enter an Order awarding the following relief:

a) Injunction ordering Defendants to:

1. destroy all of Ms. Vardalas' booking photographs taken without her hijab;

2. eliminate all policies, practices and/or customs that require incarcerees to remove religious head coverings for booking photos and while being detained at their facilities;

3. adopt policies that require booking photographs to be taken with religious head coverings, so long as the face is visible for identification purposes;

4. adopt policies that permit incarcerees to wear religious head coverings and long sleeves while being detained at their facilities; and,

5. require appropriate training for correctional officers regarding religious head coverings and related policies;

b) Declaratory judgment that:

1. Defendants' policies, practices and/or customs that require the removal of religious head coverings for booking photos and during detentions are a violation of RLUIPA; and,

2. Ms. Vardalas' rights were violated when she was required to remove her hijab in front of male officers, when she was required to remove her hijab for her booking photos, and when she was required to wear short sleeves in violation of her sincerely held religious beliefs, in violation of RLUIPA.

3. Ms. Vardalas' rights were violated when her booking photographs were uploaded to a statewide database accessible to law enforcement agencies across Illinois and to the public.

c) Judgment in Plaintiff's favor on all causes of action alleged herein pursuant to RLUIPA;

d) Award of nominal and punitive damages under 42 U.S.C. § 2000cc-2;

e) Award of attorneys' fees and costs predicated upon 42 U.S.C. §§ 1988 and 2000cc-2(d), which authorize the award of attorneys' fees and costs to prevailing parties, pursuant to RLUIPA; and,

f) All such other relief to which Ms. Vardalas is entitled or that this Honorable Court deems just and proper.

**JURY DEMAND**

NOW COMES Plaintiff, by and through her undersigned counsel, and hereby demands a trial by jury of the above-referenced causes of action.

Dated: March 19, 2021

Respectfully submitted,

CAIR LEGAL DEFENSE FUND

BY: /s/ Lena F. Masri
LENA F. MASRI (VA 93291) ∂
lmasri@cair.com
GADEIR I. ABBAS (VA 81161) β €
gabbas@cair.com
JUSTIN M. SADOWSKY (DC 977642) β
jsadowsky@cair.com
453 New Jersey Ave., S.E.
Washington, D.C. 20003
Tel: (202) 742-6420

CAIR-CHICAGO

BY: /s/ Phillip Robertson
PHILLIP ROBERTSON
17 N State St
Chicago, IL 60602

*Attorneys for Plaintiff*

∂ *Admitted to practice in this Court*
β *Admission pending*
€ *Licensed in VA, not in DC.*
*Practice limited to federal matters.*